**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| QUINN WOOD, | | |
| Plaintiff, | | No. 17-CV-3001-LRR |
| vs. | | **ORDER** |
| ABCM CORPORATION and HAMPTON MOTEL CORPORATION, | | |
| Defendants. | | |

_____

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.   RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.  SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.   SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*V.    RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.    The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.    Wood's Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.    Overnight Duties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *D.    Wood Terminates Overnight Shift* . . . . . . . . . . . . . . . . . . . *7*

*VI.   ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *A.    Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B.    Agreement Between the Parties* . . . . . . . . . . . . . . . . . . . . *10*
    *C.    Reasonableness of the Agreement* . . . . . . . . . . . . . . . . . . . *11*
    *D.    IWPCL Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*VII.  CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*I. INTRODUCTION*

The matter before the court is Defendants ABCM Corporation ("ABCM") and Hampton Motel Corporation's ("Hampton Motel") (collectively, "Defendants") "Motion for Summary Judgment" ("Motion") (docket no. 19).

## II. RELEVANT PROCEDURAL HISTORY

On April 12, 2017, Plaintiff Quinn Wood filed an Amended Complaint (docket no. 16) alleging that Defendants did not compensate him for overtime worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code Chapter 91A. *See generally* Complaint. On November 14, 2017, Defendants filed the Motion. On November 21, 2017, Wood filed a Resistance (docket no. 20). On December 1, 2017, Defendants filed a Reply (docket no. 22). Neither party requests oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over Wood's claim arising under the FLSA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the IWPCL claim because it is so related to the claim within the court's original jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material

if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party, and affording him all reasonable inferences, the uncontested facts are as follows.

### A. *The Parties*

Wood is a resident of Hampton, Iowa, and was employed by Hampton Motel. *See* Defendants' Statement of Undisputed Material Facts ("Defendants' SUMF") (docket no. 19-2) ¶ 1. At all relevant times, Hampton Motel was an active corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Hampton, Iowa.[3] *Id.* ¶ 2. ABCM was an active corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Hampton, Iowa. *Id.* ¶ 3. ABCM was employed by Hampton Motel to manage the property and employees. *Id.* ¶ 9. Richard Allbee owned Defendants. *Id.* ¶ 8.

### B. *Wood's Employment*

Hampton Motel was a small motel with approximately nine employees. *Id.* ¶ 5. The motel rented rooms to customers on a daily and weekly basis. *Id.* The motel did not have a twenty-four hour shift; rather, its regular business hours were 7:00 a.m. to 11:00 p.m. *Id.* ¶ 6. Guest traffic during business hours was low, with only one or two customers each day. *Id.* ¶ 7. Hampton Motel employed one front desk clerk during business hours to assist customers and perform other tasks. *Id.* ¶¶ 7, 22. For non-business hours, a sign was posted on the lobby door that asked customers to contact the motel's landline for non-emergencies. *Id.* ¶ 6.

On or about November 21, 2013, Wood began working for Hampton Motel as a part-time front desk clerk. *Id.* ¶¶ 21-23. Wood's duties included greeting and checking in guests, tracking the money drawer, providing necessities to guests and some

---

[3] In September 2016, Hampton Motel sold its business and stopped operating as an active corporation. *Id.* ¶ 4.

housekeeping. *Id*. ¶ 22. Initially, Wood worked three weekends a month, approximately eighteen hours a week, with the ability to pick up additional shifts. *Id*. ¶ 23. Beginning in early 2014 through January 2016, Wood began working every weekend shift while also picking up shifts throughout the week. *Id*. ¶ 24. The weekend shift required Wood to work Friday, Saturday and Sunday from 3:00 p.m. to 11:00 p.m. *Id*. During this time, Wood worked approximately twenty-four hours a week. *Id*. From February 1, 2016 to April 25, 2016, Wood also picked up a shift on Wednesday from 3:00 p.m. to 11:00 p.m. *Id*. ¶ 25. Wood continued to work his normal weekend shift, providing him roughly thirty-two hours of work each week. *Id*. From September 2015 until the summer of 2016, Wood also worked part-time as a sales associate for Dollar General Corporation. *Id*. ¶ 18.

### C. *Overnight Duties*

On January 19, 2016, Wood signed a six-month lease to rent an apartment that was located on-site at Hampton Motel. *Id*. ¶ 31. The lease agreement provided for an apartment and garage space in exchange for a rent of $400 a month. *Id*. ¶ 32. The lease term ran from March 1, 2016 to August 31, 2016. *Id*. ¶ 33. On January 31, 2016, Wood moved into the apartment early. *Id*. ¶ 34. Hampton Motel did not charge him rent until the start date of his lease. *Id*. The lease agreement did not contain any provisions relating to work duties at Hampton Motel. *Id*. ¶ 35. Prior to signing the lease agreement, however, Wood met with his direct supervisor, Dawn Field, and the motel's bookkeeper, Lucy Oehlert. Plaintiff's Statement of Additional Facts (docket no. 20-2) ¶ 1. The parties agreed that if Wood moved into the on-site apartment he would cover the overnight shift. *Id*.

Field and Oehlert explained the duties of the overnight shift to Wood. Defendants' SUMF ¶ 37. The overnight shift covered the hours of 11:00 p.m. to 7:00 a.m., when Hampton Motel did not employee a front desk clerk. *Id*. ¶¶ 6-7, 37. During these hours, guests could not access the lobby, but could ring the doorbell or call the posted number.

5

Plaintiff's Statement of Additional Facts ¶¶ 7-8. If a guest called the motel's non-emergency line, it would ring to a phone in Wood's apartment. *See* Defendants' Appendix (docket no 19-3) at 47. Wood was required to be available to assist guests during the overnight shift. Plaintiff's Statement of Additional Facts ¶ 11. His duties included answering his phone and his door, helping guests check in or out and assisting guests who locked themselves out of their room. *Id.* ¶¶ 6, 9.

Field and Oehlert explained that Wood would be paid his regular hourly rate for any time he spent assisting customers and performing work duties. Defendants' SUMF ¶ 37. Wood was required to record the time he spent performing work duties in fifteen-minute increments. *Id.* As such, if Wood spent five minutes helping a customer he would record that time as fifteen minutes worked. *Id.* ¶ 38. Wood understood that he would only be paid for the time he recorded and that he would not be paid his hourly wage or a flat fee for every hour of the overnight shift. *Id.* ¶¶ 38, 42. Wood also understood that he would be paid overtime for any hours he worked over forty in a seven day workweek. *Id.* ¶ 44. Wood accepted the terms of the overnight shift as presented to him by Field and Oehlert. *Id.* ¶¶ 39-41.

While working the overnight shift, Wood's only restriction was that he had to be available if a customer needed assistance. *Id.* ¶ 60; Plaintiff's Response to Defendants' SUMF ¶ 60. Wood was free to engage in personal activities in his apartment, including: sleeping, spending time on his computer, eating meals, having friends over, reading books, watching television, doing laundry or any other activity that did not prevent him from assisting customers if needed. Defendants' SUMF ¶¶ 46-51, 54-60. Wood was aware that he could contact Field to let her know if he would be unavailable to work the overnight shift. *Id.* ¶ 62.

Wood admits that he was rarely required to perform work duties during the overnight shift. *See* Defendants' Appendix at 34. Rather, the majority of his time was

spent sleeping or on his computer. Defendants' SUMF ¶ 63. Wood admits that prior to working the overnight shift he typically spent the hours of 11:00 p.m. to 7:00 a.m. sleeping or on his computer, the same activities he generally engaged in while working the overnight shift. *Id.* ¶ 45.

Wood worked the overnight shift from January 31, 2016 to April 28, 2016, and recorded all instances during which he performed overnight duties. *Id.* ¶ 76. In February, Wood recorded nine instances, eight of which were recorded at fifteen minutes and one instance recorded at one hour. *Id.* ¶ 77. In March, Wood recorded nine instances, eight of which were recorded at fifteen minutes and one instance recorded at forty-five minutes. *Id.* ¶ 78. In April, Wood recorded eight instances, all of which were recorded at fifteen minutes. *Id.* ¶ 79. Defendants never questioned the time Wood recorded and he was paid for all recorded time. *Id.* ¶¶ 81-83. During this time, Wood continued to work, and be compensated for, his normal front desk shifts on Wednesday and the weekend.

### D. Wood Terminates Overnight Shift

On or about April 27, 2016, Wood learned that a new employee had been assigned to cover the Wednesday shift he had been working since February 1, 2016. *Id.* ¶ 65. In response, Wood put a note in the front desk log book stating, "Effective May 1, 2016 management will begin paying me for overnight at $25 per night as required by law." *Id.* ¶ 66. Allbee sent Wood an email stating that Defendants were not required by law to pay him $25 per night because he is not required to be at the motel, that he is paid for any time actually worked and that they only require him to inform them when he is not there at night so someone else can cover the shift. Defendants' Appendix at 88.

On or about April 28, 2016, Wood provided notice to Field that he would be on a leave of absence from all of his shifts from April 28, 2016 to May 8, 2016. Defendants' SUMF ¶ 69. On May 7, 2016, Wood sent an email to Allbee detailing various complaints about his employment and his apartment. *Id.* ¶ 71. Wood stated that he would "not be

performing overnight duty until these issues are resolved in a way that I am happy with." *Id.* In response, Allbee informed Wood that Defendants would be willing to terminate Wood's apartment lease early and that Wood was still employed if he would like to continue working his regular shifts. *Id.* ¶ 72.

On May 9, 2016, Wood returned to his regular weekend shift as a front desk clerk. *Id.* ¶ 73. Wood no longer worked the overnight shift. *Id.* On June 19, 2016, Wood provided Defendants with his two-week notice and worked his final weekend shift on July 3, 2016. *Id.* ¶ 27. Wood lived in the on-site apartment until his lease expired on August 31, 2016. *Id.* ¶ 75.

## VI. ANALYSIS

Wood admits that Defendants paid him for all recorded hours worked as a front desk clerk and during the overnight shift, including any overtime. Wood, however, contends that "Defendants did not compensate [him] for his waiting time or for the fact that he was tethered to his apartment" by the duties of the overnight shift, in violation of the FLSA's overtime compensation requirements. Resistance at 1; *see also* 29 U.S.C. § 207(a)(1) (providing the FLSA's overtime requirements). Defendants do not dispute that the FLSA's overtime requirements applied to Wood, but contend that Wood was fully compensated per the requirements of the FLSA.

### A. Applicable Law

Under the FLSA, employees engaged in interstate commerce "are entitled to overtime compensation for working more than forty hours in a week." *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997) (citing 29 U.S.C. § 207(a)(1)). "Employers and employees may not, in general, make agreements to pay and receive less pay than the [FLSA] provides for." *Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 680 (8th Cir. 1996). "The regulations, however, do provide certain exceptions . . . [including] 29 C.F.R. § 785.23, which allows the use of a 'reasonable agreement' to determine the

8

number of compensable hours due an employee who works at home or who lives on the employer's premises." *Id.* at 680-81. This regulation is captioned "Employees residing on employer's premises or working at home," and states:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

29 C.F.R. § 785.23. The Eighth Circuit Court of Appeals has applied 29 C.F.R. § 785.23 (the "homeworker's exception") to situations in which employees resided on the employer's premises or worked at home. *See Gaby v. Omaha Home for Boys*, 140 F.3d 1184 (8th Cir. 1998) (discussing work performed by employees residing on the employer's premises); *Rudolph*, 103 F.3d 677 (discussing work performed at the employee's home).

In this case, both parties agree that the homeworker's exception applies to the overnight shift worked by Wood. *See* Resistance at 2 (stating that Wood "agrees that 29 C.F.R. § 785.23 governs this matter"). The court also independently finds that the homeworker's exception applies because Wood worked out of his personal apartment, which was located on Hampton Motel's premises, Wood's duties were sporadic and difficult to predict, Wood had abundant time for private pursuits during the shift and Wood had periods of complete freedom during the day. *See Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1191 (5th Cir. 1989) (finding that the plaintiff, who worked from home, "had complete freedom during the day and, even while on duty at night, she had enough time for eating, sleeping, and entertaining. This is all the freedom that § 785.23 and the homeworker's exception require"), *cited with approval in Rudolph*, 103 F.3d at 681; *see*

9

*also*, *Bennet v. Carl's Towing, LLC*, 2005 WL 2101002, at *4 (W.D. Mo. Aug. 31, 2005) (detailing Eighth Circuit precedent and noting "that the most important factors in determining the applicability of [the homeworker's exception] are the uncertainty of time actually worked, the intermittent nature of the employment obligation, and the existence of periods of free time for the employee to engage in personal pursuits"). Wood, however, argues that the parties did not enter into a "reasonable agreement" as required by the homeworker's exception.

### B. *Agreement Between the Parties*

Wood contends that the parties did not enter into an agreement as required by the homeworker's exception because there "was no agreement for [his] waiting time in between customer activities." Resistance at 3. This argument is contradicted by the undisputed facts. Wood admits that Field and Oehlert explained the unique duties and compensation scheme for the overnight shift. Wood understood that he would only be paid for the time he spent performing work duties and that he would not receive a normal hourly wage or flat fee for every hour of the overnight shift. Accordingly, the agreement was clear that Wood would not be paid for periods of time during which he was not performing work duties. Wood accepted this compensation arrangement. Wood's understanding of the agreement is highlighted by the fact that, while working the overnight shift, he tracked his time in fifteen-minute increments for duties performed, but did not track time when he was not working and was free to engage in personal activities. While Wood may, and does, argue that these terms make the agreement unreasonable, the alleged unreasonableness of the agreement does not invalidate its existence. Accordingly, the court finds that the undisputed facts establish the existence of an agreement between the parties. *See Rudolph*, 103 F.3d at 682-83 ("A party who has made an unambiguous written contract will not be heard to say that no agreement was made.").

Wood also argues that the parties' agreement did not meet the requirements of the

10

homeworker's exception because Defendants set his compensation without negotiation. Resistance at 3. Wood provides no persuasive argument or case law suggesting that the homeworker's exception requires a back-and-forth negotiation between the parties on the terms of compensation. Rather, the standard contractual requirements of offer and acceptance will suffice to form an agreement. *See Gaby*, 140 F.3d at 1187-89 (finding a reasonable agreement in a case where the defendant provided the plaintiffs with an employment contract that was accepted without negotiation). In this case, Defendants clearly provided the terms of the overnight shift and Wood accepted those terms. That Wood did not negotiate his compensation does not invalidate the agreement.

### C. *Reasonableness of the Agreement*

The next issue is whether the compensation agreement was reasonable. The homeworker's exception "allows the use of a 'reasonable agreement' to determine the number of compensable hours due an employee who works at home or who lives on the employer's premises." *Rudolph*, 103 F.3d at 681. "[A]n employer can pay the employee according [to] any reasonable agreement that takes into consideration all of the pertinent facts." *Halferty*, 864 F.2d at 1191. The Eighth Circuit has upheld as reasonable agreements designed to compensate the employee for time spent working and not engaged in personal pursuits. *See Gaby*, 140 F.3d at 1186-88 (finding reasonable an agreement that paid house parents who lived on the employer's premises twenty hours of overtime a week based on "an assumed ten hours of work activity" a day); *Rudolph*, 103 F.3d at 683 (upholding the reasonableness of an agreement under which officers with canine units received "one-half hour of compensation per day, a take-home vehicle, and no specialist pay").

Wood contends that conflicting evidence on the reasonableness of the compensation agreement forecloses summary judgment in this case. *See* Resistance at 6. Wood notes that the duties of the overnight shift limited his nightly movement because he needed to be

available to assist customers. *Id.* at 5. Wood argues he was not reasonably compensated for the restrictions on his movement or the "waiting time" during the shift that he was not helping customers.[4] *Id.* While the court acknowledges that these factors weigh on its decision, the court finds that the compensation agreement was reasonable in light of all the pertinent facts.

The minimal requirements of the overnight shift meant that Wood was generally free to engage in personal activities. During the overnight shift, Wood was rarely required to assist customers or perform work duties. When Wood did engage in work duties, he was able to complete most of them in less than fifteen minutes. As such, Wood spent the majority of his time free to engage in personal activities in his apartment, including: sleeping, spending time on his computer, eating meals, having friends over, reading books, watching television, doing laundry or any other activity that did not prevent him from assisting customers if needed.

The restrictiveness of any requirement that Wood remain near his apartment during the shift was minimized by the timing of the shift. The overnight shift lasted from 11:00 p.m. to 7:00 a.m., which are normal sleeping hours. If Wood chose to sleep, he would rarely be interrupted by his duties. In fact, Wood admittedly spent the majority of his time during the overnight shift sleeping or on his computer. Wood was also informed that he could contact Field to let her know if he would be unavailable to work the overnight shift.

---

[4] Wood also contends that he was under Defendants' control during the overnight shift and was actually "on-call." Resistance at 5-8. The court considers these arguments but notes that these issues weigh on whether the homeworker's exception is applicable at all, not whether the agreement was reasonable. *See Halferty*, 864 F.2d at 1189-91 (comparing the "waiting to be engaged" doctrine with the homeworker's exception, and finding that the homeworker's exception was applicable). Wood admits, and the court has found, that the homeworker's exception is applicable in this case and, thus, these arguments are misplaced. *See* Resistance at 2 (stating that Wood "agrees that 29 C.F.R. § 785.23 governs this matter").

Finally, Wood's ability to sleep during the overnight shift left him free during the day to do what he pleased. Wood had such sufficient free time during the day that he was able to work normal front desk shifts at the motel, hold a part-time job at Dollar General and engage in other activities.

Based on these undisputed facts, the agreement was reasonably designed to compensate Wood for the time he spent performing work duties. Wood tracked any and all time he spent working in fifteen-minute increments. In light of the limited nature of Wood's duties, tracking his time was a simple task. Further, using fifteen-minute increments made it easier for Wood to track his time, provided additional compensation for those instances when Wood was awoken by a customer request that only required a few minutes to resolve and generally ensured that the time Wood spent working was rounded up in his favor. Thus, the compensation agreement established a reasonable means to track and compensate Wood for any and all time spent working during the overnight shift. The homeworker's exception does not require Defendants to compensate Wood for time spent engaged in personal activities. *See Halferty*, 864 F.2d at 1189-91 (comparing the "waiting to be engaged" doctrine, which may require compensation for "idle time," and the homeworker's exception, which does not). As such, in light of all pertinent facts, the compensation agreement was reasonable as a matter of law. *See id.* at 1187-91 (finding reasonable an agreement that paid the plaintiff a flat rate of $250 a month for working from home five nights a week as a telephone dispatcher from 5:00 p.m. to 8:00 a.m.).

Accordingly, the court shall grant the Motion as to Wood's FLSA claim.

### D. IWPCL Claim

Wood also brings a IWPCL claim "to cover wages earned during overnight hours for which he did not receive compensation but that did not exceed forty hours in a given week and thus were not eligible for FLSA overtime compensation." Resistance at 9. The IWPCL is distinct from the FLSA because it does not establish wages owed but, rather,

"simply requires that an employer 'pay all wages due its employees.'" *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) (quoting Iowa Code § 91A.3); Daniel Dorris, *Fair Labor Standards Act Preemption of State Wage-and-Hour Law Claims*, 76 U. Chi. L. Rev. 1251, 1258-59 (2009) (noting that the IWPCL "is purely remedial and does not provide the amount of wages to be paid, instead relying on Iowa's wage-and-hour law or the FLSA"). In this case, Wood does not allege any specific entitlement to wages other than through the FLSA and specifically "requests that the [c]ourt apply the same [§] 785.23 analysis" to his IWPCL claim. Resistance at 10.

The court acknowledges that there is some disagreement as to whether the FLSA preempts duplicative IWPCL claims. *See Zanders v. Wells Fargo Bank N.A.*, 55 F. Supp. 3d 1163, 1167-76 (S.D. Iowa 2014) (analyzing contradictory case law). The court need not address the preemption issue in this case. Wood's IWPCL claim relies entirely on his FLSA claim. The court has already found that Defendants did not violate the FLSA for the reasons enumerated above. Thus, Wood's IWPCL claim fails for exactly the same reasons as his FLSA claim. As such, the court finds that summary judgment is appropriate on Wood's IWPCL claim and the issue of whether the claim is preempted is moot.

Accordingly, the court shall grant the Motion as to Wood's IWPCL claim.

### *VII. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED**:

(1) Defendants' Motion for Summary Judgment (docket no. 19) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to enter judgment in accordance with the above findings; and

(3) The Clerk of Court is **DIRECTED** to terminate all outstanding motions.

The Final Pretrial Conference is **CANCELLED** and the trial date is **VACATED**. **IT IS SO ORDERED.**

**DATED** this 22nd day of February, 2018.

                                              LINDA R. READE, JUDGE
                                              UNITED STATES DISTRICT COURT
                                              NORTHERN DISTRICT OF IOWA